Mr. William E. Sherman Attorney, West Volusia Hospital Authority Post Office Box 48 DeLand, Florida 32721-0048
Dear Mr. Sherman:
On behalf of the Board of Commissioners of the West Volusia Hospital Authority, you ask substantially the following question:
Are the provisions of section 155.40, Florida Statutes, applicable to the West Volusia Hospital Authority, permitting the Authority to lease or sell its hospital facilities to a qualified private party?
In sum:
While section 155.40, Florida Statutes, authorizes the West Volusia Hospital Authority, subject to the conditions specified in the statute, to lease or sell its facilities to a qualified private party, the authority should provide the affected public with the opportunity to make a reasonable evaluation of the proposed transfer through public notice hearings to ensure that disposition of the facilities established and supported by public funds is in the best interests of the hospital district.
The West Volusia Hospital Authority (Authority) is a special tax district created pursuant to Chapter 57-2085, Laws of Florida, as amended, with all the powers of a body corporate.[1] The Authority was created for and charged with the responsibility pursuant to its enabling act "to establish, construct, operate and maintain such hospital or hospitals as . . . shall be necessary for the use of the people of said district."[2] The act provides that "[s]aid hospital or hospitals shall be . . . operated and maintained . . . for the preservation of the public health, and for the public good and for the use of the public of said district; and maintenance of such hospital . . . is hereby found and declared to be a public purpose and necessary for the preservation of the public health and for the public use and for the welfare of said district and inhabitants thereof."[3]
To accomplish these purposes, the Authority was given the power to issue bonds and levy taxes.[4] As the court noted in News- JournalCorporation v. Memorial Hospital-West Volusia, Inc.,[5] "[o]ver the years, a considerable amount of tax money was levied, collected, and used to build, furnish and equip the West Volusia Memorial Hospital."
Section 155.40(1), Florida Statutes, provides:
"In order that citizens and residents of the state may receive quality health care, any county, district, or municipal hospital organized and existing under the laws of this state, acting by and through its governing board, shall have the authority to sell or lease such hospital to a for-profit or not-for-profit Florida corporation, and enter into leases or other contracts with a for-profit or not-for-profit Florida corporation for the purpose of operating and managing such hospital and any or all of its facilities of whatsoever kind and nature. The term of any such lease, contract, or agreement and the conditions, covenants, and agreements to be contained therein shall be determined by the governing board of such county, district, or municipal hospital.The governing board of the hospital must find that the sale,lease, or contract is in the best interests of the public and muststate the basis of such finding. If the governing board of a county, district, or municipal hospital decides to lease the hospital, it must give notice in accordance with paragraph (4)(a) or paragraph (4)(b)." (e.s)
As a hospital authority created by special act, the West Volusia Hospital Authority clearly would appear to fall within section155.40(1), Florida Statutes, which by its own terms applies to any county, municipal or district hospitals "organized and existing under the laws of this state." Such a conclusion is consistent with previous opinions of this office which applied section155.40, Florida Statutes, to hospital districts and authorities created pursuant to special act.[6]
Moreover, this office is aware that the Authority has already leased the Authority's facilities. When the Authority determined that a not-for-profit corporation could provide more efficient and economical hospital care, it leased its facilities to Memorial Hospital in order for that not-for-profit company to replace the Authority in providing the hospital care it had previously provided. The issue of whether this not-for-profit lessee is subject to this state's open government laws is now pending before the Supreme Court of Florida.[7]
Section 155.40(2), Florida Statutes, requires that any lease, contract or agreement made pursuant to the statute must:
"(a) Provide that the articles of incorporation of such for-profit or not-for-profit corporation be subject to the approval of the board of directors or board of trustees of such hospital;
(b) Require that any not-for-profit corporation become qualified under s. 501(c)(3) of the United States Internal Revenue Code;
(c) Provide for the orderly transition of the operation and management of such facilities;
(d) Provide for the return of such facility to the county, municipality, or district upon the termination of such lease, contract, or agreement; and
(e) Provide for the continued treatment of indigent patients pursuant to the Florida Health Care Responsibility Act and pursuant to chapter 87-92, Laws of Florida."
In the event that the governing board elects to sell or lease the hospital, the governing board must:
"(a) Negotiate the terms of the sale or lease with a for-profit or not-for-profit Florida corporation and publicly advertise the meeting at which the proposed sale or lease will be considered by the governing board of the hospital in accordance with s.286.0105; or
(b) Publicly advertise the offer to accept proposals in accordance with s. 255.0525 and receive proposals from all interested and qualified purchasers."[8]
The statute requires that any sale be for fair market value, and any sale or lease must comply with all applicable state and federal antitrust laws.[9] Any funds received by the Authority from such sale must be used in accordance with the purposes of the Authority as set forth in its enabling legislation, that is, the preservation of the public health of the inhabitants of the district.[10]
In addition, however, I am of the view that the affected community should be given an opportunity to review and comment upon any proposed transfer of hospital assets. As noted above, over the years a considerable amount of tax money was levied, collected, and used to build and equip the West Volusia Memorial Hospital. In light of the community support provided by the public in the establishment and operation of the hospital, and the concerns that may arise regarding the continued provision of health care within the district should the authority's facilities be sold or transferred, the affected public should be provided with adequate notice and information to reasonably evaluate the fairness and effect of such a transfer before the authority consummates the transfer. Such disclosures should include sufficient information to determine whether the authority is receiving fair market value for the facilities as required by law, whether the proposed transfer was negotiated at arm's length, how the proceeds of the proposed transaction are to be used, and whether members of the authority have been offered or accepted any personal or familial benefit from the entity seeking to lease or purchase the facilities.
Accordingly, I am of the opinion that while section 155.40, Florida Statutes, authorizes the West Volusia Hospital Authority, subject to the conditions specified in the statute, to lease or sell its facilities to a qualified private party, the authority should provide the affected public with the opportunity to make a reasonable evaluation of the proposed transfer through public notice hearings to ensure that disposition of facilities established and supported by public funds is in the best interests of the hospital district.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The act has been amended a number of times, see, e.g., Chs. 59-1949, 65-2344, 67-2152, 82-383, 88-473, Laws of Florida. While all of these modified the original act, none made substantial changes in the mission or jurisdiction of the hospital authority.
[2] Section 5, Ch. 57-2085, Laws of Florida.
[3] Section 5, Ch. 57-2085, supra.
[4] See, ss. 8, 14 and 15, Ch. 57-2085, Laws of Florida, as amended.
[5] 695 So.2d 418, 419 (Fla. 5th DCA 1997).
[6] See, e.g., Ops. Att'y Gen. Fla. 84-87 (1984) (s. 155.40, Fla. Stat., authorizes Highlands County Hospital District, created by special act as a special district, to lease the district's facilities to a private not-for-profit Florida corporation); 85-31 (1985) (provisions of s. 155.40 applicable to Santa Rosa Hospital, Inc., created by special act as a separate county facility); 89-52 (1989) (hospital authority may transfer management and operational duties and responsibilities of the hospital facilities as authorized by s. 155.40).
[7] See, Memorial Hospital-West Volusia, Inc. v. News-JournalCorporation, 700 So.2d 686 (Fla. 1997) [Case No. 90,835]. The district court in News-Journal Corporation v. Memorial Hospital-WestVolusia, Inc., 695 So.2d 418, 420 (Fla. 5th DCA 1997), concluded that the not-for-profit corporation was acting on behalf of the authority and therefore was subject to the open government laws of this state.
[8] Section 155.40(4), Fla. Stat.
[9] Id. Section 155.40, Fla. Stat., was amended in 1996 to permit the sale of the hospital. See, Ch. 96-304, Fla. Stat. Prior to 1996 amendment, s. 155.40, Fla. Stat. 1995, only authorized the reorganization of a county, municipal or district hospital as a not-for-profit corporation and the lease of hospital facilities to a not-for-profit corporation. The courts had held the divestment of title to the district's land by the hospital district to the not-for-profit corporation was a voidable act: "[T]he statute does not permit divestment of the title to the land by the district."See, Jess Parrish Memorial Hospital, Inc. v. City of Titusville,506 So.2d 22, 24 (Fla. 5th DCA 1987). The 1996 amendment to the statute also authorized the sale or lease of the hospital to a for-profit corporation.
[10] Compare, s. 617.1406(3)(c), Fla. Stat., providing that a plan of distribution of assets of a not-for-profit corporation must provide that
"Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational, or similar purposes, but not held upon a condition requiring return, transfer, or conveyance by reason of the dissolution, be transferred or conveyed to one or more domestic or foreign corporations, trusts, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation, as provided in the plan of distribution of assets[.]"